Page I

RECEIVED & FILED 2255 Motion 2004

04 DEC 27 PM 4:04

CLERK'S OFFICE
U.S. DIST. COURT
SAN JUAN, P.R.

Direct Examination of Melvin Vega Ortiz, police officer with the Commonwealth of Puerto Rico, assigned to the fugitive task force, with the federal Bureau of Investigation of San Juan.

Officer Ortiz states on page 28- Question 10 thru 23, how he and agents Knocked on Luz M. Padilla's door, identified themselves, restrained ms. Padilla. The agents then entered the residence to do a protective Sweep for the Security of the agents.

At no time did Officer Ortiz state that after identifing themselves as agents did they tell ms. Padilla that She was under arrest, or they had a warrant for her.
At no time did Officer Ortiz mention that ms. Padilla' Miranda rights were read to her in English or Spanish.

Page 33 Line 1 thru 12- Officer was questioned about Exhibit One, where he signed his signature, but he did not write down the time. Why not? Isn't it proper procedure? Time is of the essence.

page 2          28 USC. 2255 Motion          2004

On page 38 Officer Ortiz claims he did not know the address before he got to Ms Padilla' house. Why not?

Officer Ortiz does not remember when Ms Padilla was taken away. He did not know if any officers left the premises before she was taken away. Pg. 38 L-20-25 Pg 39 L. 1.

Pg 39 L. 17 - When Officer Ortiz was asked "Do you know if she (Ms. Padilla), was given her Miranda rights"? - Line 18, Officer Ortiz answered, I don't recall that, no. I don't recall that.

Pg 40 L 18 - Officer Ortiz was asked, why did you not at the time go and secure a Search warrant?

Pg 41 L 3 - Again Officer Ortiz was asked why did you not secure a search warrant after the protective sweep had been performed while she was already outside and in your custody and outside of the apartment?

The Court states: That answers the protective Sweep, but why didn't you go and get a Search Warrant? Officer Ortiz has no answer.

page 3          28 U.S.C. 2255 Motion          2004

Page 42 Line - The Court is asking again, Why did you not go get a search warrant.

It is obvious that Officer Ortiz could not answer the questions asked him because he was afraid to. I'm sure Officer Ortiz was not accustomed to being part of serving a search warrant in the manner he witnessed at Ms. Padilla's house.

Officer Ortiz was smart enough not to perjure himself on a witness stand, under oath in a court of law.

Officer Ortiz did not even know where he was going when the F.B.I. Agents picked him up to go and serve a warrant on Mrs. Padilla. He couldn't even remember the time, everything happened so fast.

There was no knock at the door at Ms. Padilla's residence. These Agents "busted" through the front and back doors of her residence, With shotguns aimed in her face and then through her to the floor, While her daughter screamed in horror.

Page 4 28 U.S.C. 2255 Motion 2004

Officer Ortiz could not answer when asked how many police officers or Agents there were. He could not answer when asked what Ms. Padilla was wearing.

There was no search warrant or consent to search by Ms. Padilla. I doubt she even had the time to think or blink with Agents busting through her house with guns drawn and pointed at her face, frightened for her daughter.

The Court was wrong, trying to convince Officer Ortiz into saying Ms. Padilla tricked him, that he could search the house, then saying she didn't give consent. pg. 42 L14-25-pg. 43 L-1.

Agent Sandra Blaine almost perjuried herself on the witness stand, but she caught herself. page 46- L 1-25-page 47 Line 1-22. Agent Blaine clearly states she was outside and dosen't know what happened, because she wasn't there.
Agent Blaine does not recall dealing with a little girl. She dosen't remember anything either. Page 48-L6, I don't exactly L.11-L.16 recall, I don't remember, I don't recall.

28 U.S.C. 2255 Motion

Mrs Padilla should not have been convicted on the information provided by the arresting agents that could not remember anything.

Mrs. Padilla should not have been convicted on the information of the arresting agents who did not show up in court. Mrs Padilla has the right to be confronted by the witnesses against her, also to cross-examine these witnesses. This violates the "6th Amendment Confrontation Clause".

For the Government to imply that Ms. Padilla received information through a so-called "toilet telephone" in the jail while incarcerated is utterly ridiculous. The authorities claim that Ms. Padilla was "Tipped-off", to the Agents coming to her house, so she had an opportunity to get rid of evidence. This information is based on hearsay evidence and is inadmissible in a court of law as is the rest of the hearsay evidence against Ms Padilla and any evidence obtained through an illegal Search and Seizure.

page 1    28 U.S.C. 2255's motion.    2004

04 DEC 27 PH 4:04

Luz Padilla respectfully moves, pursuant to the Fifth Amendment right to due process of law, to the Sixth Amendment right to Jury trial, to 28 U.S.C. 2255, to U.S. v. Green 2004, U.S. Dist. LEXIS 11292 (D. Ma. 04), and to Blakely v. Washington 542 U.S. — 124 S.CT. 2531 (04), Pet. for reh'ng denied, 2004 U.S. LEXIS 4887 (04) and its progeny, that the Court vacate her sentence and impose a just and reasonable sentence.

June 24, 2004 the Supreme Court decided Blakely.

Ms. Padilla did not Appeal or contest sentence Guidelines to her case. To prevail under 2255 she must now demonstrate cause and prejudice Massaro v. U.S. 538 U.S. 500, 504, 123 S.CT. 1690, 1693, (2003); Sustache - Rivera v. Us. 221 F.3d. 8, 17 1st Cir. (2000). cert denied 532 U.S. 924 (2001) Kenny v. U.S. (2002) DNH 99, (2002) U.S. Dist. LEXIS 9091 (2002) (unpublished opinion). Her case meets that standard.

Apprendi v New Jersey, 530 U.S. 466, 120 S.CT. 2348, (2000), was denied three and a-half years before Sentencing. It held that pursuant to the Sixth Amendment any fact other than a

page 2                28 U.S.C. 2255 motion                2004

prior conviction which increases the penalty
for a crime beyond the prescribed statutory
maximum must be submitted to a Jury and
proved beyond a reasonable doubt. Prior to
June 24, 2004 when Blakely was decided, the
First Circuit Court of Appeals and all the other
courts of Appeal consistently held that Apprendi
did not apply to Federal Sentencing guidelines.

 Blakely, 124 S.CT. at 2547 n. 1 (Justice
O'Connor dissenting, citing cases) prior to
June 24, 2004, so long as the sentence did
not exceed the offense statutory maximum
drug quality was treated as a sentencing
factor determined by the Judge based upon
the preponderance of the evidence, not as
an element of the offense to be found by
a Jury beyond a reasonable doubt. U.S. v.
Goodine, 326 F.3d. 26, 32-36 (1st Cir 2003), cert.
denied 124 S.CT. 1600 (2004); U.S. v. Glaum, 356
F.3d. 169, 178, (1st Cir. 2004).

 When this court sentenced Luz Padilla,
there appeared to be no viable challenge
to the constitutionality of the Sentencing
Guidelines. CF. Campbell v. U.S. (2004) U.S.
App. LEXIS 18037 *7-9 (1st Cir. 8-25-04)(Unpublished)

Cert of appealability denied; counsels failure to anticipate Blakely-based sentencing arguments not unreasonable performance under Strickland; well established First Circuit precedent contravened such arguments. U.S. v. Morgan, (2004) U.S. App. LEXIS 18734, *14 (1st Cir. 9-2-04) (unpublished) (Cir. precedent foreclosed appellate review of Sentenced-based on Blakley arguments which were neither raised in District Court nor briefed.

The dearth of Authority to support a Constitutional attack on the Federal Sentencing Guidelines prior to June 24, or constitutes Cause for Ms. Padilla's failure to do so at her sentencing.

Since the Sentencing Guidelines are un-Constitutional, the court has the power to impose a fair and just sentence without regard to the Guidelines.

Six days before the Blakely decision, Chief Idge William Young issued a wide ranging, well-Supported Sentencing memorandum which considered Constitutional issues not raised by the Defendants at their Sentencing and which concluded that

page 4    28 U.S.C. 2255 motion    2004

the U.S.S.G. are unconstitutional. U.S. v. Green, (2004) U.S. Dist LEXIS 11292 (D-mass 6-18-2004). Neither the Supreme Court nor the First Circuit Court of Appeals has yet to address the constitutional analyses in Green. This court can and should do so.

Green anticipates Blakely in extending Apprendi and Ring v. Arizona, 536 U.S 122 S. CT. 2428 (2002), to guideline sentencing. It also anticipates the courts of Appeal decisions extending Blakely to the Federal Guidelines, requiring that any sentence-enhancing fact be proven to a Jury beyond a reasonable doubt or admitted by the defendant. Furthermore, Green goes beyond those cases to demonstrate that the combined efforts of various changes to the Federal Sentencing process since Mistretta v. U.S., 488 U.S. 361, 109 S. CT. 647 (1989), particularly the Feeney Amendment abridge Federal Defendants due process rights to a fair trial before a Jury of their peers and to the Government bearing the burden of proof beyond a reasonable doubt, and violate the constitutional principle of Separation of powers by aggrandizing the Executive and Legislative Branches at the expense of the Judicial branch.

At least one District Court has held that Feeney's Judicial reporting requirement unconstitutionally stifles Judicial independence contrary to Article III of the U.S. Constitution. U.S. v. Mendoza (2004) U.S. Dist. LEXIS 1449 Cen. D. California (1-12-04). For the reason stated in Green and Mendoza, the Federal Guidelines Scheme which governed Ms. Padilla's sentencing, violated those Fifth and Sixth Amendment Rights.

"With it's clarification of a defendant's Sixth Amendment rights, the Blakely court worked a sea change in the body of Sentencing Law." U.S. v. Ameline, 376 F.3d. 967, (2004) U.S. App. LEXIS, 15031, 12* (9th Cir. 2004 (citing cases).

This court should follow the cogent reasoning in the cases which conclude that Blakely extends Apprendi to the Sentencing Guidelines.

In Blakely the Supreme Court said: Our precedents make clear that the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the facts reflected in the jury verdict or admitted by the Defendant. In other words, the relevant statutory maximum is not the maximum

28 U.S.C. 2255 Ymotion 2004

Sentence a Judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

Ms. Podilla did not knowingly and intelligently relinquish or abandon the constitutional rights manifested in Green, Blakely and later cases, She may properly assert those rights before this Court. U.S. v. Abbott, 241 F. 3d. 29, 33-34, (1st Cir 2001).

The Saunder conclusion is that they were designed as an integrated regime, that they therefore cannot be severed into Constitutional or unconstitutional parts while still remaining true to the legislative purpose, and they are wholly unconstitutional.

U.S. v. Croxford, (2004) U.S. Dist. LEXIS 12156, (D-UTAH, June 29, 2004) holding the Guidelines wholly unconstitutional and using the Guidelines as advisory but not necessarily bindings; U.S. v. Mueffleman (2004) U.S. Dist. LEXIS 14114 at 42-45 (D-Ma July 26, 2004) (same). Such was the view of two of the 3 Judges panel in U.S. v. Mooney, (2004) U.S. App. LEXIS 1530 1st at 43 Whose opinions has been vacated for en banc review (04) U.S. App. LEXIS 16302 (8-6-04)

28 U.S.C. 2255 Motion    2004

Solem v. Helm, 463 U.S. 277, 103 S.CT.
3001, 77 L.Ed 2d 637 1983 - The Supreme Court
held that the <u>Eighth Amendment</u> requires a
prison sentence to be proportionate to the
Crime for which the defendant has been
Convicted <u>Id. at 289-90, 103 S.CT. at 3009-10.</u>

Although cautioning that no prison sentence
is per se constitutional, the Court advised
reviewing Courts to grant substantial deference
to the broad authority that legislatures necessarily
possess in determining the types and limits of
punishment for crimes, as well as to the discretion
that trial Courts possess in sentencing convicted
Criminals." <u>Id at 290, 103 S.CT. at 3009</u> (quoting
<u>Rummel v. Estelle, 455 U.S. 263, 272, 100 S.CT.</u>
<u>1133, 1138, 63 L.Ed 2d 382 (1980).</u>

Respectfully,
Luz M. Padilla
11-24-04

Page 7          28 U.S.C. 2255 motion          2004

<u>United States District Judge Presnell Concluded:</u>

The suggestion that courts use the Guidelines in some cases but not others at best schizophrenic and at worst contrary to basic principles of Justice, practicality, fairness, due process, and equal protection. Courts simply cannot apply a determinate sentencing code to one defendant, whose sentence raises no Judicial fact-finding enhancement issues and a separate discretionary scheme to another defendant whose sentence does raise enhancement issues.

Respectfully,
Luc y. Padilla
1-09-04

28 U.S.C. 2255 motion 2004

RECEIVED & FILED
04 DEC 27 PM 4:04
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN

Melendez a 353 F3d at 93;

The District Court improperly delegated its sentencing authority by allowing the probation officer to determine the number of drug tests that Ms. Padilla must undergo during Supervision.

Review for abuse of discretion - United States v. Phaneuf, 91 F3d 255, 262 (1st Cir 1996); United States v. Pepe 80 F. 3d 19, 22 (1st Cir 1996)

One drug test within 15 days of release on Supervision and thereafter as required by the probation officer.

The Sentencing Court erred by delegating to the Probation Officer additional drug testing to be ordered during Supervised release. The Court should have imposed a limit on the number of drug tests probation can direct. This is a delegation infirmity which constitutes error. This case should be remanded for re-sentencing. The District Court impermissibly delegated its authority to the Probation officer by delegating the number of drug tests that Ms. Padilla must undergo while on Supervised release.

Defendant: LUZ MARIA PAL A  
Case Number: CRIM. 97-74-03 (DRD)

Judgment-Page 3 of 4

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **five (5) years.**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance, firearms, destructive device or other dangerous weapons.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and any other periodic drug tests thereafter, whenever so requested by the probation officer. If any such samples detect substance abuse, the defendant shall participate in a substance abuse treatment program, arranged and approved by the U. S. Probation Officer, until duly discharged by authorized program personnel with the approval of the U. S. Probation Officer.

[ ] The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

[x] The defendant shall not unlawfully possess controlled substances, and shall refrain from possessing firearms, as defined in 18 U.S.C. Section 921, or other dangerous weapons. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of the is judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime. In addition:

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer within 72 hours of any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 S (Rev. 4/90) Sheet 3 - Supervised Release

Searches, Seizures, and Privacy Rights

A. The Fourth Amendment:

The Fourth Amendment to the United States Constitution provides in part that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. The language of the amendment raises two questions: (1) When has a search or seizure occurred, triggering the protections of the Fourth Amendment, and (2) When is a search or seizure prohibitively unreasonable?

Nowhere in the Constitution is a right of privacy specifically set forth. But privacy interests are clearly protected and promoted by the Fourth Amendment, which restricts governmental intrusions into our homes, seizures of our property, and searches and seizures of our bodies.

Amendment 4-3490:

If search of a house is to be upheld as incident to arrest, arrest must take place inside house, not somewhere outside — whether two blocks away, twenty feet away or on sidewalk near front steps. Vale v. Louisiana, La. 1970, 90 S.CT. 1969, 399 U.S. 30, 26 L.Ed 2d 409.

One's house cannot be lawfully searched without search warrant except as an incident to a lawful arrest therein. Shipley v. California, Cal. 1969, 89 S.CT. 2053, 395 U.S. 818, 23 L.Ed. 2d 732.

In order to be justified in conducting a warrantless search of a residence after making an arrest inside the residence, the Government must be able to point to specific and articulable facts which, taken together with rational inferences from the facts, would reasonably warrant the intrusion. U.S. v. Gardner, CA. Cal. 1980, 627 F2d 906.

Belief, however well founded, that articles are concealed inside of dwelling house, does not justify a search of dwelling incident to an arrest; the arrest must be made inside the house. U.S. v. Jackson, C.A. Ohio 1976, 533 F.2d 314.

28 U.S.C. 2255 motion

Fourth Amendment

For the Government to prove the Constitutionally of its intrusion against an individual's claim of a violation of a reasonable expectation of privacy, government must demonstrate that place where intrusion occurred is one where individual did not have a Justified expectation of privacy, intrusion, was not aided by mechanical or electronic means, and investigating officer was situated where an individual should anticipate that another person might have a right to be. U.S.C.A. Const. Amend. 4.

The Fourth Amendment to the United States Constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and Seizures."

28 U.S.C. 2255 Motion

The makers of our Constitution....
Conferred, as against the government, the
right to be let alone the most comprehensive
of rights and the right most valued by
civilized man. To protect that right, every
unjustifiable intrusion by the government
upon the privacy of the individual, whatever
the means employed, must be deemed a
violation of the Fourth Amendment. And the
use as evidence in a criminal proceeding,
of facts ascertained by such intrusion must
be deemed a violation of the Fifth Amendment.

The Fourth Amendment ensures and protects
the "Freedom" from unreasonable searches and
Seizures is a Substantive protection available
to all inhabitants of the United States, whether
or not charged with a crime.

page 1                28 U.S.C. 2255 Motion          2004

Superseding Indictment- Criminal no. 97-74
(DRD.) Page 5-6
Leaders:
1) Jesus R. Perez-Cruz AKA "Indio" was one
of the leaders and organizers of the drug-
trafficking organization described in Counts
One and Two. He did lead, organize, control,
enforce through the use of violence and
supervise the sales of controlled substances
at drug points located at the Manuel A.
Perez Public Housing Project, Rio Piedras,
Puerto Rico. He did direct and supervise
numerous subordinates.
(A) to supply sellers with the drugs to be sold
and collect the proceeds derived from their sale
at drug points, to package drugs, to provide protection,
to sell narcotics and personally deliver drugs
to sellers and runners. No where is Luz Padilla's
name mentioned as a leader or organizer, This
person, Jesus R. Perez alta Indio was in charge.

2) Reynaldo-Maysonet-Narvaez alta Chacho-was
one of the leaders and organizers of the drug-
trafficking organization described in Counts
one and two. He did lead, organize, control,
enforce through use of violence, and supervise
the sale of controlled substances at drug

page 2    28 U.S.C. 2255 Motion    2004

points located at the Manuel A. Perez Public
Housing project, Rio Piedras, Puerto Rico. He did
direct and supervise numerous subordinates whose
principle tasks were to supply, sell, collect proceeds,
and package drugs for sale. To provide protection.
no where is Luz Padilla's name mentioned as a
leader or an organizer. This person Reynaldo-
Maysonet-Narvaez aka Chacko was in charge.

3) b. Luz Maria Padilla aka "Luzma" was
one of the runners. She received packaged
narcotics from Jesus-R. Perez-Cruz aka Indio
and Reynaldo Maysonet-Narvaez aka "Chacho"
and deliver them and collect proceeds.
She was not a leader or a organizer or
a superviser.

Luz Padilla did not possess, branish, or use
firearms as defined in Title 18, United States
Code, Section 921 (a)(3). She did not use guns
to provide protection for the drug operations.

Luz Padilla did not aide and abet in car-
jacking numerous vehicles to shoot at rival-
drug trafficking organizations.

page 3        28 U.S.C. 2255 motion        2004

Luz Padilla did not aide & abet in storing or hide from view controlled substances or firearms as defined in Title 18, United States Code, Section 921(g)(3).

Luz Padilla had no involvement whatso ever in what the leaders and organizers did to conduct their illegal business ventures including violence and murder. She was simply a runner.

Pursuant to USSG. 3B1.1(c) was erronously applied to Ms Padilla requiring a (2) level upward adjustment for being a supervisor of some kind in the offense. There is no proof that Ms. Padilla was a supervisor of any kind, Just a runner. Its just hearsay evidence.

The evidence in this case was not strong enough to support a conspiracy charge that would let such hearsay be admitted, instead a preconceived Judgement was formed without a factual basis, which was damaging to Ms. Padilla's legal rights which subjected her to undue prejudice.

page 1

28 U.S.C. 2255 motion                    2004

United States District Court - Suppression Hearing

march 30, 1998 - Honorable Daniel B. Dominguez

Hato Rey, Puerto Rico - CR - 97 - 74 (DRD)

Mr. Rivera - page 2 - Line 11 - Motion to suppress - remains open.

The Court - page 2 Line - 13 - It is.

Court - page 2 Line - 21 - Lets get the facts.

Court - page 3 - Line - 1 - May I ask a question?

Mr. Rivera - page 3 - Line - 2 - Yes

Court - page 3 - Line - 3 - I notice the United States may have several witnesses.

Mr. Pereira - page 3 - line - 5 - Their not here.

Court - page 3 - Line - 6 - They're not your witnesses?

Mr. Pereira - page 3 - Line 7 - They are agents for the United States in charge of this investigation, but witnesses I do not have present.

Page 2         28 U.S.C. 2255 Ymotion        2004

Arrest - April 11, 1997 - Police Knocked -

Line 22 - page 3 - I opened the door and a firearm
was put in my face. The officers told
me they had a warrant, but did not
Know why.

Page 3 - Line - 11 - While I was being hand-cuffed, police
walked into my house and opened back-
door, to let in other officers (Pg 4 - L-12).

Page 5 - Line - 13 - Police were searching house and
to - Line - 17     one officer was telling me to sign
authorization for them to Search my
house, I said no, because the police
were already searching throughout
my house.

Page - 8 - Line 2 - 18 - I would not sign consent to
Search, I Know my rights.

The police were trying to intimidate Mrs. Padilla
with a show of force, by the presence of numerous
officers with Guns drawn. They illegally Searched
the premises while Mrs. Padilla was outside of
the house. Police were already Searching the
house, while trying to get her to Sign consent form.

Page 3 — 28 U.S.C. 2255 Motion — 2004

Page 10 - L-11 - Mrs. Padilla did you at any point consent to being searched, for your premises to be searched, on the morning of April 11, 1997?

Page 10 - L-14 - no - (Mrs. Padilla was outside of the Apartment - Page 36 - L-11- Ortiz)

Page 12 - L-21 - Mr. Pereira - Her testimony was that they had long weapons and she was unfamiliar with weapons. That was the direct examination of this witness.

Page 12 - L-17 - You're also familiar with weapons, are you not? You know what an AK-47 is and you know what a shotgun is and you know the different types of weapons are?

Mr. Rivera: Objection, Your Honor. Page 12 L-20

Page 4      28 U.S.C. 2255 motion      2004

Ortiz - : Page 35 L-15 When she opened the door, meaning (Luz Padilla) we identified ourselves again. F.B.I, we have an arrest warrant and she came out freely. (She was outside)

Rivera - Q Page 35 Line 17 - She came out of the apartment?

Ortiz - A Page 35 Line 18 - She came out of the apartment.

Ortiz - A Page 35 Line 19 - We gave her instructions to come out of the apartment and she complied with the instructions she was given.

Rivera - Q Page 36 Line 9 - Now, you also indicated that while you were searching the entire apartment Ms. Padilla never told you to stop or any thing?

Ortiz - A Page 36 Line 11 - No. She was outside of the apartment.

If search of a house is to be upheld as incident to arrest, arrest must take place inside the house, not somewhere outside.

Ms. Padilla, was outside of the apartment while she was arrested and the house was searched.